[No. 3441. Sept. 9, 1929.]

[Rehearing Denied Sept. 24, 1929.]

GUTIERREZ et al. v. MIDDLE RIO GRANDE CONSERVANCY DIST. et al.

[282 Pac. 1.]

W. A. Sutherland, of Las Cruces, and E. R. Wright, of Santa Fe, for appellants.

Pearce C. Rodey and Joseph L. Dailey, both of Albuquerque, for appellees.

OPINION OF THE COURT

CATRON, J. Appellants, plaintiffs in the lower court, filed their amended petition for an injunction to restrain

the defendants from selling or disposing of any bonds, debentures, or other evidence of indebtedness or performing any other act that would adversely affect the property and rights of plaintiffs, under the authority contained in the New Mexico Conservancy Act, chapter 45 of the Laws of 1927, upon the ground that said act is unconstitutional. Appellees filed what is termed a "Motion for Want of Equity," as well as a demurrer, challenging the sufficiency of the amended petition. Hearing was had in the district court of Bernalillo county, and the motion and demurrer were sustained and the amended petition dismissed. Appellants bring the case here by appeal.

Before considering the various points advanced by appellants, we deem it both appropriate and necessary to make a preliminary statement. Our Legislature enacted chapter 140, Laws of 1923, which we shall for convenience hereafter call the old Conservancy Act. The Middle Rio Grande Conservancy District was created as a corporate entity under the authority of said act. Thereafter both the constitutionality of said act and the legality of the corporate existence of said conservancy district were attacked in a suit instituted in the district court of Bernalillo county, where the act was upheld and appeal taken to this court. This court, in the case In re Proposed Middle Rio Grande Conservancy District, 31 N. M. 188, 242 P. 683, in an elaborate opinion, affirmed the judgment of the lower court. In this opinion it was pointed out that the said act was a conservancy act and not a reclamation act, and that New Mexico had patterned its law after the Ohio and Colorado Conservancy Acts. Later our Legislature passed chapter 45 of the Laws of 1927, which we shall hereafter for convenience call the Conservancy Act. A careful comparison of the two acts discloses, that the only material changes made are the addition in the Conservancy Act of irrigation or reclamation as one of the purposes of said act and the exclusion of certain portions of the state of New Mexico from the effects thereof. Otherwise the two acts are practically the same in so far as they relate to the questions now before us. The Conservancy Act in the repealing and saving clause, section 910, provided that the repealing of the old Conservancy

Act shall not invalidate any acts or proceedings theretofore done thereunder, and that the continuity and status of any district organized under the provisions of said act shall be unaffected by the repeal thereof, and such district shall continue to exist under and be governed by the provisions of the new act.

We shall now proceed to consider the several points presented by appellant attacking the constitutionality of the Conservancy Act. For convenience we shall, wherever possible, treat kindred points jointly.

 Appellants contend that the Legislature has attempted to confer jurisdiction of conservancy matters upon a new court, not inferior to the district court, contrary to section 1, art. 6, of the Constitution.

Of course the mere use of the name "conservancy court" in referring to the district court when sitting in special proceedings would be of no consequence. The extension of the territorial jurisdiction of the district courts in cases of this kind has already been upheld. In re Dexter-Greenfield Drainage District, 21 N. M. 286, 154 P. 382; In re Proposed Middle Rio Grande Conservancy District, 31 N. M. 188-213, 242 P. 683. Nor do we attach any importance to the fact that the power to appoint the directing board of a conservancy district extending beyond the limits of a single judicial district is committed to a board of district judges.

Appellants lay considerable stress upon the fact that under sections 311, 405, and 410 the taking of private property for the use of the district may be accomplished either in the conservancy court and in the conservancy proceedings upon the report of appraisers, or by an ordinary condemnation proceeding in the district court. This is not conclusive that the conservancy court is not in fact the district court. It is merely an accumulation of remedies.

Paragraph 7 of section 103 of the Conservancy Act specifically defines the terms "Conservancy Court" and "Court" and is as follows:

"In case of a conservancy district or proposed conservancy district lying in one judicial district, whenever the term 'Court' or 'Conservancy Court' is used, and not otherwise specified, it shall be taken to mean the district court of that judicial district of the State of New Mexico wherein the petition for the organization of a conservancy district shall be filed, or a judge thereof in vacation. In case of a conservancy district, or proposed conservancy district lying in more than one judicial district then for the purposes of this Act, the words 'court' or 'conservancy court' shall have the same significance, except that the appointment of directors and appraisers shall be made by a board of judges in the manner prescribed in section 301."

We find nothing in this definition nor in appellant's argument to convince us that any new court has been created.

Appellants contended that by the act the Legislature has attempted to confer upon the conservancy courts legislative powers in violation of article 3, § 1, of the Constitution. We do not understand them to object to the conference of administrative powers merely incident to the proper exercise of judicial powers, nor seriously to question the correctness of In re Dexter-Greenfield Drainage District and In re Proposed Middle Rio Grande Conservancy District, supra, wherein we held that the power to appoint controlling boards was constitutionally conferred. Their contention is that by the Conservancy Act powers essentially legislative are conferred upon the court. They contend that, by reason of the control of the court over the acts of the board of directors and its power to approve or disapprove, the court is the real administrative authority in all important concerns of the district; that under sections 305, 309, 316, and 404, respectively, the court is given power to make plans, to make contracts, leases, sales, etc., to make rates, and to include or exclude lands from the district.

We think the contention is based upon misconstruction of the act. The plan-making power, the contract-making power, and the rate-making power, which for present purposes we may concede to be essentially legislative, are all delegated primarily to the board of directors. The board must proceed in these matters with due regard to the Conservancy Act and to the legal rights of interested parties. Before the acts of the board can become effective, the sta-

tute provides for notice to all interested parties so that they may make any legal objections. The court merely hears such objections. The court's power to modify or reject results only from its duty, upon objection, to keep the board within the statute, and to protect the rights of interested parties. Such functions we deem judicial.

Appellants contend that subsection 3, § 201, of the Conservancy Act, which provides that certain facts shall not disqualify the judge, violates section 18, art. 6, of our Constitution, and therefore the act is unconstitutional.

The constitutional and statutory provisions involved are as follows:

"No judge of any court nor justice of the peace shall, except by consent of all parties, sit in the trial of any cause in which either of the parties shall be related to him by affinity or consanguinity within the degree of first cousin, or in which he was counsel, or in the trial of which he presided in any inferior court, or in which he has an interest."

Subsection 3, § 201, c. 45, Laws of 1927:

"No judge of such court wherein such petition is filed or other judge exercising administrative or judicial functions under the provisions of this Act shall be disqualified to perform any duty imposed by this Act by reason of ownership of property within any district or proposed district, or by reason of ownership of any property that may be benefited, taxed or assessed therein."

The foregoing constitutional provision contains no absolute disqualification. It confers a right upon the litigants which they may exercise or waive by consent. If a litigant chooses to avail himself of his constitutional right, then our procedure requires that some motion, objection, or other appropriate remedy be invoked calling the grounds of disqualification to the court's attention and demanding a ruling thereon.

The amended complaint does not allege that the judge who sat in the conservancy district case was the owner of property within said conservancy district or that he was the owner of any property that would be benefited, taxed, or assessed therein. Nor is there anything in the record before us indicating that recusation was ever urged in any manner.

352

The mere possibility that such question might arise in the future does not make the Conservancy Act unconstitutional, for, if recusation were urged, the judge might disqualify himself, and under our Constitution a judge not subject to recusation would be assigned. Under such circumstances the acts of the court under the Conservancy Act would not be void as appellants contend.

It is, however, urged that we should assume that the trial judge did own property in the conservancy district. We cannot indulge such presumption, but we might well assume that, no recusation having been urged, no grounds therefor existed. From aught the record before us discloses, the trial judge was not disqualified.

■ Appellants next urge that the approved cost of the conservancy project exceeds the assessed benefits; that, although the approved estimated cost of the project is much less than the approved assessment of benefits, nevertheless, when the construction fund assessment is paid on the "deferred payment" plan, then the interest on said deferred payments plus the actual assessment would make the ultimate cost in excess of the assessment of benefits; that, as a result thereof, perpetual liens will be placed upon plaintiff's property far above the benefits that can ever be expected to accrue, and that therefore no benefit whatever will result to plaintiff's lands; that the election provided for in section 505 of the act, to either pay the assessment without interest within 60 days or thereafter pay the assessment with interest charge is unwarranted, arbitrary, and oppressive, and that, even if the property owner has elected to pay in full, he is not thereby relieved of the interest charge, and his property is still subject to the lien; that the election to pay in installments constitutes a waiver of all right to object to the official plan, and consent to the issuance of bonds and the payment of interest thereon, all of which amounts to confiscation of property and a violation of the due process clause of the State and Federal Constitutions.

The act, in so far as material to these questions, provides for the preparation of plans and specifications for the improvements for which the district was created, in-

cluding estimate of costs; for hearings on all objections and exceptions thereto and for modification or amendment thereof; for final approval thereof as the official plans of the conservancy district. It also provides for the appointment of a board of appraisers who shall, after the adoption and approval of the official plans, appraise the benefits of every kind to all lands and property within or without the district which will result from the carrying out of the official plans. If, after the disposition of all exceptions to the appraisements, it appeals to the satisfaction of the court that the estimated cost of the improvements contemplated in the official plan is less than the benefits appraised, the court shall approve the same as the award of the appraisers. Thereafter the board shall levy, on all property upon which benefits have been appraised, an assessment of such portion of such benefits as may be found necessary by said board to pay the cost of appraisal, the preparation and execution of the official plans, and other expenses therein contained in an amount not to exceed in principal the appraised benefits adjudged. After the assessment record has been completed and filed, any owner of property assessed for the executions of the official plans, shall have the privilege of paying such assessment, without interest, any time within 60 days after completion of publication of notice, and, if so paid, the secretary shall enter upon the assessment record opposite every tract for which the assessment is paid the words "paid in full." Failure to pay such assessment within the time prescribed shall be held an election on the part of the person interested to pay such assessment in installments and as consent to the issuance of bonds and the payment of interest thereon and as a waiver of any question of the validity or correction of such assessment. In case of election to pay by installments, the assessment shall be payable in no more than 40 annual installments of principal, with interest on unpaid principal not to exceed 8 per centum per annum.

The act further specifically provides, paragraph 2, § 408, that the estimated total cost shall not include interest on deferred payments, and, in paragraph 2, § 504, that the interest on the bonds shall not be construed as a

part of the cost of construction, in determining whether the cost of the improvements exceeds the benefits appraised.

Interest on deferred payments is not a part of the assessment nor does it ever become such; it is the carrying charge on the unpaid portion of the assessment; it does not go into the improvement nor change its cost. If the property owners all pay their assessments within the 60-day period, then the conservancy district need issue no bonds, but, if a portion elect to pay in installments, then the district must issue and sell bonds sufficient to enable it to carry out the project. The interest paid on the bonds certainly is not a part of the assessment; it does not go into nor become a part of the cost of the improvements. The interest collected from those who pay in installments offsets the interest which they have caused the district to pay on its bonds.

Since the benefits assessed admittedly exceed the approved estimated costs, we have no case of confiscation.

Nor can we see, for reasons hereinafter stated, that the requirement that an election be made within 60 days whether to pay in full or in installments with interest is so unreasonable as to violate any constitutional right contended for by appellants.

 Appellants further contend:

"That the Conservancy Act under the authority of which said district was continued after its creation under chapter 140 of the Laws of New Mexico of 1923, purports to authorize the creation of districts of the kind in question as conducive to the public health, safety, convenience and welfare, whereas warrant does not exist in fact and did not exist at the time of the passage of said acts for their passage in aid or exercise of the police power of the State of New Mexico, and hence the said laws constitute a taking of the property of the plaintiffs without due process of law."

The first paragraph (section 101) of chapter 45 of the Laws of 1927 provides:

"Declaration. The establishment of conservancy districts for the purposes and in the manner provided for in this Act is hereby declared to be conducive to the public health, safety, convenience and welfare."

See, also, sections 103 and 906.

It thus appears that the Legislature of New Mexico in the exercise of its police power has in its wisdom declared that conservancy districts for the purposes provided for in the act are necessary for the public health, safety, convenience, and welfare of the state.

As hereinabove pointed out, the Conservancy Act is not materially different from the old Conservancy Act, which in turn was patterned after the Ohio and Colorado Conservancy Acts. This court has heretofore, in the case of In re Proposed Middle Rio Grande Conservancy District, supra, passed upon many constitutional questions involving our old Conservancy Act, and in its opinion upholding the constitutionality of said act cited and extensively quoted from the decisions of the Supreme Courts of Ohio and Colorado upholding the constitutionality of the Ohio and Colorado statutes. On page 195 of 31 N. M., 242 P. 686, we said:

"It is asserted that there has been and is danger of disastrous floods in the territory comprising the Middle Rio Grande District. As to the imminence of such danger, it is not our province to conclude. That was the Legislature's province."

Again on page 202 of 31 N. M., 242 P. 689:

"The people have, by their Constitution, intrusted much of their political power to their duly elected representatives in the Legislature, subject to the power reserved by them to disapprove, suspend, and annul laws enacted by the Legislature, except laws of a certain kind, among the exceptions being 'laws providing for the preservation of the public peace, health, and safety.' The power to enact such laws without referendum was intrusted to the Legislature alone."

See sections 1 and 2, art. 4, N. M. Constitution.

And on page 218 of 31 N. M., 242 P. 696:

"As we have said, the provisions of the New Mexico Conservancy Act are essentially the same as the Conservancy Acts of Colorado and Ohio. What may have been the impending dangers to the public safety, health, and welfare of the inhabitants of the state of New Mexico to call forth the passage of the act is not before us and is unimportant. The wisdom and necessity for such legislation is within the province of the Legislature, and the act should not be declared unconstitutional unless it is clearly so."

For other cases upholding the constitutionality of similar acts, see Miami County v. Dayton, 92 Ohio St. 215,

110 N. E. 726; People v. Lee, 72 Colo. 598, 213 P. 583; Orr v. Allen (D. C.) 245 F. 486, affirmed 248 U. S. 35, 39 S. Ct. 23, 63 L. Ed. 109; O'Neill v. Leamer, 239 U. S. 244, 36 S. Ct. 54, 60 L. Ed. 249; Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369.

Appellants, however, earnestly contend that, before the state may exercise its police power, an actual necessity must exist; that in Colorado and Ohio the declaration of the necessity by the Legislature followed upon the heels of disastrous floods, but that in New Mexico no such necessity existed nor exists. Such a rule in our opinion would to a great extent be destructive of the police power. We cannot approve such contention. But, were we to invade the province of the Legislature and question the wisdom of their declaration, we would be compelled at the present time to take judicial notice of the recent disastrous flood covering a considerable portion of the Middle Rio Grande Conservancy District and the havoc, damage, and destruction of property occasioned thereby and hold that a necessity did and does exist in New Mexico and that the Legislature exercised great wisdom in its declaration in our Conservancy Act and by the passage thereof, according to the people of New Mexico the opportunity to protect themselves and their property against the impending dangers.

Appellants next argue:

"That the Conservancy Act at section 406, is contrary to the Constitution and invalid in that notice providing for hearings on appraisal of benefits and damages is inadequate and insufficient in that it provides only for a notice by publication without a reasonable time limit and without naming the plaintiffs herein or describing the lands affected or showing the amounts involved and such lack of notice constitutes a taking of the property of plaintiffs without due course of law."

The above section provides that, upon the filing of the report of the appraisers, the court shall, by order, fix the place and time for hearing thereon, not less than 30 days nor more than 60 days after the report of the appraisers is filed; that thereupon the clerk shall cause notice by publication to be made in each county in the district of the filing of said report and of the time and place of the hearing thereon. It further provides that it shall not be

necessary for the clerk to name the parties in interest nor to describe separate lots or tracts of land in said notice, but that it shall be sufficient to give such description as will enable the owner to determine whether or not his land is covered by such description.

Section 407 provides that any property owner may within 10 days after the last publication of notice file written exceptions to the report.

Two propositions are thus presented for our consideration—the sufficiency of the notice as to the time, and the sufficiency of the notice as to description of property involved.

We will first consider the latter. The act clearly provides, as hereinbefore pointed out, that it shall not be necessary to name the parties interested nor to describe the separate tracts of land, but that it shall be sufficient to such description as will enable the owner to determine whether or not his land is covered by such description. If the act is followed, then the property owner will be able to determine whether or not his land is included in the conservancy district. If, however, it be contended that the act has been so framed as to afford opportunity of abuse in the manner of its application and that a description in the notice might give the property owner sufficient information so that he may readily determine whether his property is included, we hold that the mere fact that a law may afford the opportunity of abuse in the manner of application is no objection to the law itself from the standpoint of its constitutionality. In re Proposed Middle Rio Grande Conservancy District, supra, 31 N. M. 202, 242 P. 683; State v. State Investment Co., 30 N. M. 491, 239 P. 741.

Upon the question of the sufficiency of the notice, we have heretofore held that no constitutional rights are violated so long as notice is given and opportunity for hearing of a party's grievance is afforded at some state of the case before his property be irrevocably charged with liens and special assessments. In re Proposed Middle Rio Grande Conservancy District, supra, 31 N. M. 202-213, 242 P. 683, and cases cited.

There can be no question but that notice to parties whose rights are to be affected by judicial proceedings is an essential element of due process. That the Legislature may prescribe what notice shall be given, subject to the condition that the notice prescribed must conform to the requirements of due process of law by affording an opportunity to be heard, is too well established to require the citation of authorities. The rule, however, may be found in 12 C. J. "Constitutional Law," § 1006. The foregoing, however, is subject to certain limitations, namely, that the procedure must afford reasonable notice and fair opportunity to be heard before a final determination. See note 33, Id.

When analyzed, the act in question affords at least 30 day's notice and possibly more, as the court may determine, in reviewing the act of the Legislature in fixing a quantum of notice, we may only consider whether it is reasonable and affords parties fair opportunity to be heard. We cannot hold that the time here fixed is unreasonable nor that it deprives any person of a fair opportunity to be heard upon any objection.

Appellants, however, insist that there is no provision whatsoever in the Conservancy Act providing for a hearing on objections to the assessment made against their property.

In this we think appellants are in error. Sections 406 and 407 as hereinabove pointed out afford ample opportunity for the hearing of objections to the report of the appraisers. After the report of the appraisers has been approved by the court as the award of benefits, then the act becomes automatic as to the assessments against property, and such assessments may be made at various times during the execution of the official plans to an amount not exceeding the assessed benefits. A property owner's rights are primarily affected by the assessment of benefits which gives the right of the assessment against the property. It thus seems clear that the act does afford ample opportunity to be heard upon the assessment.

Appellants allege that the conservancy district has attempted, without their consent, to barter away their

private vested water rights in favor of the Indians in order to obtain congressional aid for the project. This bald statement is but slightly amplified in the brief. It seems to have reference to a contract between the conservancy district and the Pueblo Indians. The contract is not before us. Clearly there is not enough in the allegation to warrant enjoining the proposed bond issue.

It is also alleged that the district intends, without making compensations, to deprive the community ditch plaintiff of its property and rights in its existing ditch by obliterating and destroying it. Sections 401(2), 316, and 311, of the Conservancy Act, make it manifest that property is not to be taken for the use of the district without compensation. The allegation of an intended unlawful taking in a particular case does not seem, however, to warrant the injunctive relief here sought. For such wrongs, other remedies must be sought.

In contending further that subsection 9 of section 316 attempts to delegate to the conservancy district power to usurp prior water rights by disposing of them to other agencies for other purposes and for compensation, appellants overlook subsections 1 and 3 of the same section, which fully recognize and protect prior rights. Subsection 9 concerns merely the disposition of water rights which have been regularly acquired by the district.

Appellants next present a question which was heretofore decided by this court in construing the old Conservancy Act. They argue that there is no warrant of law for the deprivation of the rights of the people to administer the business affairs of the conservancy district, and that this deprivation constitutes a taking of property without due process of law.

In the case of In re Proposed Middle Rio Grande Conservancy District, supra, 31 N. M. 203, 242 P. 689, this court decided the question adversely to appellant's contention. We there said:

"We do not think that the lack of a requirement that a majority of the land owners must initiate the petition, or that the absence of provisions reposing the management of the district in the property owners, is fatal to the validity of the act."

and so we must hold in the present case.

■ Appellants assert that under the provisions of the Conservancy Act any tax sale certificates taken or held by any county shall be subject to the lien and charge of all district assessments under the provisions of this act, that thereby section 32, art. 4, of our Constitution, has been violated. The constitutional provision is as follows:

"No obligation or liability of any person, association or corporation, held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court."

We are unable to follow appellant's logic. The act merely provides that, when any county takes and holds any tax sale certificate to any of the lands within the district, it shall take the same subject to all assessments and liens under the Conservancy Act. The object of the provision is to avoid the extinguishing of the assessments and liens under the Conservancy Act so that, when the county shall sell any tax certificate or lands held by it under tax sale, the purchaser must assume and pay the district assessments and liens.

We are unable to see how the section in question in any manner conflicts with the above constitutional provision.

■ The Conservancy Act authorizes assessments for benefits against public corporations as such (section 402), requires such assessments to be paid in not more than ten annual installments (section 505), and requires such installments to be paid by uniform tax upon all taxable property (section 513). It is alleged that this serves to increase the indebtedness of the various municipalities within the conservancy district beyond the limits imposed by article 9, § 13, of the Constitution.

It is difficult to escape the conclusion that these assessments with the resulting necessity of making payments from the proceeds of general taxation add to the existing indebtedness of the several municipalities. The question is whether assessments so resulting fall within the inhibition of the Constitution. In People v. Lee, supra, a case squarely in point, it was held that they do not. Though

not desiring at present to commit ourselves to all that is said in that case, upon that question we find ourselves in agreement with the conclusion. We think that the question may properly be disposed of as one of construction. The constitutional language immediately pertinent is "no * * * City, * * * shall ever become indebted to an amount * * * exceeding four per centum on the value of the taxable property within such * * * city. * * *" In construing it, however, sections 10 and 12 of the same article should be considered. Section 10 prohibits counties from "borrowing money" except for specified purposes and after a referendum. Section 12 prohibits cities from "contracting any debt" except by irrepealable ordinance providing for a tax levy to retire the debt and upon referendum. It seems then that the phrase "become indebted," construed in the light of its context, means "borrow money" or "contract debt." The debt here in question is not contracted or incurred by the city. It is imposed by a district corporate entity under legislative authority. We have always supposed that the evil aimed at was the proneness of municipalities, over-optimistic as to their futures, to adopt improvement programs in excess of their means of payment. If the Constitution makers intended that the limitation should stand in the way of improvements involving a territory much wider than the city itself, authorized by the Legislature under the police power, and to defeat a special assessment for benefits imposed upon the municipality by a state agency, they failed to make their meaning clear.

Of the cases which have come to our attention, People v. Chicago & A. R. Co., 253 Ill. 191, 97 N. E. 310, comes nearest to supporting appellant's contention. But there the debt was created by the city itself by ordinance. It assessed itself one-half of the cost of the improvement and issued bonds to pay the debt. Although the language of the prohibition was "no * * * city shall be allowed to become indebted, * * *" the court remarked "the prohibition of the Constitution is against *voluntarily* incurring indebtedness. * * *"

Appellants argue that the assessments made in the conservancy district are not uniform and equal as re-

quired by our Constitution (article 8, § 1), nor are they based upon the value of the property taxed.

This same question was fully passed upon in the case of In re Proposed Middle Rio Grande Conservancy District, supra, 31 N. M. 200, 242 P. 688, where we said:

"In the case of Davy v. McNeill et al., (31 N. M. 7) 240 P. 482, recently decided by this court, * * * we considered the difference between taxes under the revenue laws and 'special taxes' in the nature of assessments for benefits, as used in the irrigation district law of New Mexico, and quoted therein from the case of Newby v. Platte County, 25 Mo. 258, 269, as follows: 'There is a marked difference between general taxation and special assessments for local objects, and the word "tax" may be used in a contract or statute so as not to embrace within its meaning local or special taxes, although both kinds of taxation derive their authority from the general taxing power.' * * *

"See, also, Lake Arthur Drainage District v. Field, 27 N. M. 183, 199 P. 112, where we decided that specific assessment on property for improvements, based on benefits, cost of which is assessed against the property, is not a tax within the constitutional sense."

Under such conditions, we cannot see how the constitutional provision has been violated.

Appellants finally contend:

"That said conservancy laws exclude therefrom all lands south of the Elephant Butte dam and north of Santa Fe County, and defendants have excluded other lands and property which should be included in said conservancy district with equal justification as the lands and property of plaintiffs and such laws therefore constitute special and class legislation in contravention of the Constitution of New Mexico."

In so far as the Conservancy Act excludes from the effect thereof lands south of the Elephant Butte dam and north of Santa Fe county, we do not think it can be successfully contended that such an act must embrace every foot of land in the state of New Mexico. Certainly there are portions of the state which are neither susceptible of conservation nor reclamation.

The decision of the Legislature to exclude such portions or any portion of the state does not destroy the act as a general law, nor make it special and class legislation. In re Proposed Middle Rio Grande Conservancy District, supra, 31 N. M. 209, 242 P. 683; Cater v. Sunshine Valley Conservancy District, 33 N. M. 583, 274 P. 55.

As to whether or not the defendants have excluded certain lands and property which should be included in the said conservancy district is a matter purely within the enforcement of the provisions of the act, and, as heretofore stated, the fact that a law may offer opportunity for abuse in the manner of its application is no objection to the law itself from the standpoint of its constitutionality.

Having disposed of all points and questions presented by appellants, and finding no error in the judgment of the trial court, the same will be affirmed, and the cause remanded, and it is so ordered.

BICKLEY, C. J., WATSON and PARKER, JJ., and KIKER, District Judge, concur.

KIKER, District Judge, called in in place of SIMMS, J., disqualified.

## ON MOTION FOR REHEARING

CATRON, J. Two questions raised by appellants justify further comment.

In the motion for rehearing, great stress is placed upon the fact that chapter 45, Laws 1927, includes, as a purpose justifying the organization of a conservancy district, that of providing for irrigation where needed, while chapter 140, Laws 1923, did not. Because of this, it is argued (1) that the Ohio and Colorado decisions heretofore cited, and our own decision, In re Proposed Middle Rio Grande Conservancy District, 31 N. M. 220, 242 P. 683, are not in point; and (2) that, whereas the petitioners were moved by a desire only for flood control, a corporation has resulted with power to make irrigation the principal object of its program.

That reclamation by irrigation is a matter within the police power of the state does not, of course, follow from the decision that flood control is. But it is so well established as hardly to require the citation of authority, other than those cited in the original opiinon. Both purposes being within the police power, the particular powers conferred upon the district and the procedure prescribed must meet the same constitutional tests. We know of no

classification of the matters properly embraced within the police power, whereby some may be considered more important or as justifying greater interference with property rights. Both flood control and irrigation are public uses for which private property may be taken. In either case there must be the same compensation and the same due process.

Since it is here pleaded that the district was organized under the earlier act, we must assume as facts now before us both that the petition so "described the purpose of the contemplated improvement" as to bring it within section 201 of the earlier act, and that the court, after hearing, found "that the allegations of the petition were true." Thus we have a district organized, as we determined in the earlier case, for the purpose of flood control.

So far as such a district is concerned, the change in the law is immaterial. It had power under the old act to construct irrigation and drainage works or systems necessary to maintain the irrigability of lands within the district. Section 201(1)(f). The fact that under the new law another district may be organized solely for irrigation does not affect the case, so far as we can see. Inclusion of irrigation as a primary purpose sufficient in itself to authorize the organization of a district has not changed the character of the present district as one organized for the main purpose of flood control, with irrigation and drainage incident thereto.

So we are not persuaded that the distinction between the two statutes, so strongly urged upon our attention, has any material bearing upon the case before us.

Appellants contend that the provisions of section 910, c. 45, Laws 1927, whereby it is attempted to preserve the entity and status of conservancy districts organized under the provisions of chapter 140, Laws 1923, and perpetuate their existence under the provisions of and with the powers enumerated in said chapter 45, are unconstitutional and void, for the reason that the same are

not included within the title of said chapter 45, and therefore violate section 16, art. 4, of our Constitution.

Counsel in their brief say:

"This point was not presented under the original argument having been overlooked by counsel."

We might add that it is not within the issues pleaded, was not presented to nor passed upon by the trial court, nor designated in appellants' brief as one of the points upon which reversal is sought.

Moreover, appellants have pleaded and proceeded upon the theory that the Middle Rio Grande Conservancy District is an entity created under the old act, and that it purports to function under and by virtue of the authority of both old and new acts.

We are disposed, however, to decide the question upon another ground. Appellants in their brief say:

"Under their 10th point, counsel for appellants make a direct attack upon the very existence of the conservancy district."

We quite agree that the effect, and the only effect, of the present contention, is as counsel state. If so, their contention cannot be entertained in an equity proceeding. Corporate existence can be challenged only by quo warranto. The Community Ditches or Acequias of Tularosa Townsite v. Tularosa Community Ditch et al., 16 N. M. 200, 114 P. 285; State ex rel. v. Huller, 23 N. M. 306-319, 168 P. 528, 1 A. L. R. 170.

We must therefore adhere to our original opinion and deny defendants' motion for a rehearing and it is so ordered.

BICKLEY, C. J., WATSON and PARKER, JJ., and KIKER, District Judge, Concur.

KIKER, District Judge, called in in place of SIMMS, J., disqualified.