101 P.2d 190

MIDDLE RIO GRANDE CONSERVANCY DIST. v. CHAVEZ et al.

No. 4506.

Supreme Court of New Mexico.

March 6, 1940.

Rehearing Denied April 24, 1940.

Stanley W. P. Miller and George R. Craig, both of Albuquerque, for appellant.

Barnes & Corey and Jay Turley, all of Albuquerque, for appellees.

MABRY, Justice.

This cause arose over conduct of defendants herein, two of them purporting to act as commissioners and the other as mayordomo, of the Los Chavez acequia or ditch, a community acequia or ditch, within the exterior boundaries of the Middle Rio Grande Conservancy District, wherein it was attempted to deny plaintiff the right to supply from such ditch to one Santiago Salas, a water user under the ditch in question, water for use upon his immediately adjoining land unless he should first pay certain assessments which the defendant commissioners had attempted to levy against him.

The parties will hereinafter be referred to as plaintiff and defendants, the designations they bore in the court below, and the said Santiago Salas, as the "water user". The Los Chavez acequia, or ditch, will be denominated "ditch".

The broad question presented in this appeal is whether under Chap. 140, Laws of 1923, as amended by Chap. 45, Laws of 1927, Chap. 30, N.M. Comp.St. 1929, generally known and hereinafter to be referred to as the "Conservancy Act", plaintiff corporation does not have exclusive jurisdiction over the matter of the management and control of the main ditches and acequias within the area covered by the official plan of the said Conservancy District, and to what extent may the ditch commissioners acting under authority of the familiar community ditch law, Secs. 501 to 514, Chap. 151, Comp.St. 1929, control or interfere with the delivery of water through and out of the main ditches or acequias intended for the water users of any community thereunder.

The water user here referred to, though he had paid all assessments due from him and upon his land to the plaintiff corporation, he had resisted the efforts of the defendants claiming to act for the community as ditch commissioners, and the mayordomo, acting under directions of the commissioners, to themselves collect from him certain assessments, the payment of which were by the defendants made a prerequisite to his receiving water through the said ditch. When the agents and employees of the plaintiff corporation undertook to open the "take out" gate, constructed in the sides of and which is a part of the ditch itself, to permit the water user to receive water, defendants met the agents and employees with force and denied it the right to do so. A suit in injunction and for damages against defend-

ants resulted, and judgment below was for defendants. Plaintiff prosecutes this appeal.

No damages were attempted to be proven by plaintiff, and only the question of whether such interference with plaintiff's operation of the ditch should have been enjoined is before us.

It is conceded that the said water user had paid all assessments due the plaintiff district and was entitled to have the water furnished and delivered to the "take out" gate from which the water would flow immediately upon his land, unless, because of Chap. 151, Secs. 501 to 514, N.M. Comp.St. 1929, the old community ditch law, the plaintiff district does not have exclusive control of the said ditch and unless the said water user must, as a further prerequisite to obtaining water, also respond to assessments made against his land by those acting as commissioners under said last mentioned act.

It is not deemed necessary for the purposes of this case to do more than briefly refer to the history of irrigation and conservancy legislation in New Mexico. Our reports are replete with cases interpreting legislation adjudicating water rights under both the territorial and state governments. Albuquerque Land & Irrigation Co. v. Gutierrez, 10 N.M. 177, 61 P. 357; Leyba v. Armijo, 11 N.M. 437, 68 P. 939; Candelaria v. Vallejos, 13 N.M. 146, 81 P. 589; Hagerman Irrigation Co. v. McMurry, 16 N. M. 172, 179, 113 P. 823; Turley v. Furman, 16 N.M. 253, 262, 114 P. 278; Jaquez Ditch Co. v. Garcia, 17 N.M. 160, 124 P. 891;

Pueblo of Isleta v. Tondre, 18 N.M. 388, 137 P. 86; State v. Tularosa Ditch, 19 N.M. 352, 143 P. 207; In re Dexter-Greenfield Drainage Dist., 21 N.M. 286, 154 P. 382; State v. Aztec Ditch Co., 25 N.M. 590, 185 P. 549; Farmers' Development Co. v. Rayado Land & Irrigation Co., 28 N.M. 357, 213 P. 202; State v. District Court, 31 N. M. 82, 239 P. 452; and numerous others, including the more recent cases arising under plaintiff Conservancy District legislation and hereinafter cited.

We find our early territorial legislature of 1851–52 laying down simple principles of irrigation law, establishing rights in ditches or acequias and defining what are public ditches or acequias, see Chap. 151, N.M. Comp.St. 1929, supra. These rights have remained substantially unchanged through the years.

The Middle Rio Grande Conservancy District was organized under authority of a legislative act of 1923 (Chap. 140, Laws 1923) for the general purpose of preventing floods, drainage of lands, and incidentally providing for a system of furnishing and carrying water to lands for irrigation. This act was thereafter supplanted by Chap. 45, Laws 1927, Chap. 30, N.M. Comp.St. 1929 but with changes unimportant to a consideration of this case.

Long prior to the organization of plaintiff district and for generations, the Los Chavez ditch had served the community of that locality and it was recognized as such and operated as a quasi-public corporation under the old and well established community ditch law. The land owners elect their commissioners at regular intervals and they in turn employ a "mayordomo", or manager, to administer the ditch and direct all work in connection with obtaining water therefor, cleaning, repairing, or enlarging the same. Plaintiff District under the Conservancy Act, organized after 1923, may be said to be an endeavor, so far as the irrigation feature of the undertaking is concerned, to more profitably and economically serve the lands susceptible of irrigation and drainage within the district. There arises, then, under the circumstances here presented the question: Who owns or controls such main irrigation ditches? No question arises as to any individual landowner under the ditch losing any water right under the Conservancy Act, the organization effected thereunder or by decree of court.

Likewise, there is presented no question touching upon the right to manage or control any of the side or lateral ditches, not a part of the official plan of the district, the ownership and control of which is admittedly in the land owners.

It is conceded that since the organization of the Conservancy District and during the time in question, plaintiff district has had full and complete charge of the Los Chavez ditch, assessing all landowners thereunder using or having the right to use water therefrom, as under the official plan of the district provided; and such district has assumed the task and responsibility of furnishing water from the appropriation and supply to this and all other users there-

under through the said ditch and that plaintiff was ready and willing to furnish such water at the time in question. The practice generally observed since the District's organization seems to have been for plaintiff to employ the Los Chavez ditch commissioners, or the land owners thereunder, in the performance of much of the work required for the repair and upkeep of the ditch, though plaintiff has at all times maintained supervisory control and direction thereof. This may account for the considerable lapse of time before this challenge of the ownership or right of control is presented.

It is further conceded that the assessment undertaken to be levied by the defendants, the "commissioners", was not for any work required to be done upon the Los Chavez ditch in question. All expense in connection with the maintenance and operation of this ditch, as with all other main ditches under the district's plan, is borne by the district and paid for by assessments levied upon lands benefited. The assessment sought to be charged, and collected, and for the non-payment of which said water user was denied the right to receive water from the said ditch, was for attorney's fees incurred in some matter of litigation in connection with some undertaking of the ditch commissioners, if indeed, that could present a different situation, which it probably could not. Attorney's fees, properly chargeable, are assessable by the ditch commissioners if they still have authority to make payment of assessment of any character, a condition precedent to a land

owner's right to receive water from plaintiff district. State v. Casados, 27 N.M. 555, 202 P. 987.

It becomes necessary therefore to examine into the two acts in question, the Conservancy Act above mentioned, Chap. 30, N.M.Comp.St.1929, and the Community Ditch Law, §§ 151-501 to 151-514, N.M. Comp.St. 1929, and also the decree of the District Court approving the plan and organization, hereinafter referred to, and the decisions of this court interpreting the nature and extent of power to be exercised under such decree and acts, in order to determine the rights of the parties here in dispute.

Plaintiff contends that it could exercise the right of eminent domain under the constitution and laws of the state, and that the Los Chavez ditch, like other ditches within the district needed by plaintiff in the creation and operation of its irrigation and conservancy plan as officially adopted, could be, and was in fact, taken as though by condemnation, through appraisal and compensation as provided by law; that damages therefor were paid to the landowners under such ditch by a system of credit given in favor of such lands under said ditch against the more substantial charge for benefits set up in the appraisal records and duly and regularly adopted after notice and hearing by the court.

Defendants deny there ever existed the right to take over said ditch, suggesting both a constitutional and statutory impediment. They claim, moreover, that in any event, the right to regulate the flow of

water in the ditch does not extend so far as to permit the plaintiff to say when or in what quantities any water to which any land owner thereunder would be entitled, should be available; that even though plaintiff may be conceded the right to maintain and operate such ditch, it is only for the benefit of the land owners and subject to their supervision in a manner, and that plaintiff cannot determine by whom or when shall be opened the "take out" gates to make water available to the adjoining lands for the benefit of which the said ditch is maintained. That right, defendants claim, has always been and yet remains the exclusive function of the defendants, as ditch or acequia commissioners and mayordomo, as provided by unrepealed Chap. 151, N.M.Comp.St.1929, supra.

Let us examine first, and determine the answer to, the question whether plaintiff had authority to so take over and administer the ditch in question; and then, if so whether it actually has done so in conformity with law. Upon the correct answer to these two questions rests the solution of the principal problem which this suit presents.

Under the Conservancy Act the Board of Directors named therein as provided by law, proposed a plan for reclamation, flood control and irrigation of the area embraced within the exterior boundaries of the district. This plan was thereafter, by decree of the District Court, duly and legally adopted and approved after full notice and hearing as required by the Act. Questions raised as to the legality of the district's organization and as to the adoption and approval by the Court of the appraisement report of damages and benefits, and as to the finality thereof, have been heretofore definitely settled by this court. In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683, 689; Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1, 70 A. L.R. 1261.

The New Mexico law followed closely the Colorado act, which was itself patterned after the Ohio statute. Changes were made in the New Mexico act "suitable for the conditions prevailing in the Western states". In re Proposed Middle Rio Grande Conservancy District, supra [31 N.M. 188, 242 P. 686]. Also in that case we disposed of the contention that the absence of provisions reposing the management of the district in the property owners themselves was fatal to the validity of the act. We held the contention not good and that the law in this respect was valid. The provision for the irrigation system, included with flood control and reclamation, is, however, peculiar to the New Mexico Act.

The right of the district so organized to appraise, take over and administer the old community ditches theretofore serving the communities within the area of the district was discussed and decided in the Gutierrez case, supra, and it was held that such property could be so taken, making appropriate compensation therefor, and that this was not in violation of Sec. 1, Art. 16 of the

New Mexico Constitution, which provides that "all existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed".

This court in passing upon the numerous questions raised in the two aforementioned cases held constitutional the procedure provided by the Conservancy Act and followed by the District authorities and the lower court in appraising, fixing damages and benefits and in the taking of property for the use of the District. We have held that, absent objection to the proceedings within the limit of time prescribed, all parties affected and all properties within the area were bound by the plan adopted including the property appraisal going to damages and benefits.

█ It is conceded that neither defendants nor any property owners under the said Los Chavez ditch made and sustained legal objections to plaintiff's method and manner of taking and appraising, prior to the decree approving the official plan of the district and the appraisal report. There was thus impressed upon the plan and all prior proceedings completely adjudicated and binding finality.

Sec. 308 of Chap. 30, supra (the Conservancy Act), gave to the district the right " * * * to acquire by donation, purchase or condemnation, to construct, own, lease, use and sell, to hold, encumber, control and maintain any easement, water right, acequias, well, railroad right of way, canal, sluice, flume, reservoir site, reservoir or retarding basin, mill dam, water power, franchise, park, cemetery or any other public way or place, or any real or personal property, public or private, in or out of said district, for rights of way and such other things, or for materials of construction, or for any other use not inconsistent with the purposes of this act; * * *."

The plaintiff corporation is by said act also given dominant, full and complete control in that it may "clean out, straighten, widen, alter, deepen or change the course or terminous of any ditch, community ditch or acequia * * * natural or artificial stream in or out of said district; to fill up any abandoned or altered ditch, community ditch or acequia * * * natural or artificial stream, and to concentrate, divert or divide the flow of water in or out of said district; to construct and maintain. * * * lateral ditches, community ditches or acequias, * * * and any other works and improvements deemed necessary to construct, preserve, operate or maintain the works in or out of said district; * * * * ".

Right of eminent domain is given the district, Sec. 310, Chap. 30, N.M.Comp.St. 1929, and this is made dominant over the right of eminent domain of private or public corporations. The district is given the right to condemn all properties required as well as the right to take by the appraisal system which was followed by it in this as well as other cases. Sec. 311, Chap. 30, supra.

The report of the appraisers adopted by the court upon the approval of the official

plan shows that the Los Chavez ditch was appraised, compensated for and taken over by the district. It does not become important to determine here whether the district's ownership of the Los Chavez ditch rests in a fee title as the decree of the District Court provides, or whether it is in the nature of an easement over the land with exclusive control of the ditch and management of the water that flows therein down to the point of this "take out".

The dispute here arises, as we have said, because defendants have challenged the right of the district to manage and operate the ditch in question and deliver water through it, and to permit this land user adjacent thereto to open the gate in said ditch to receive the water for which the district has taxed him and which it, and not the old community ditch corporation, is now obliged to make available.

It may not be inappropriate to observe here that it is not only the waters heretofore appropriated and available to the land owners of the communities which the ditches now under the control of plaintiff may carry, but in addition, they service any augmentation thereof developed by plaintiff through new storage facilities or by recapture through the drainage system authorized and employed. In theory at least, under the Conservancy Act machinery, the land owner is more nearly assured his water supply to the full extent of his right, if indeed under certain circumstances, he may not actually obtain waters in excess of his right.

It would mean reposing in plaintiff district a useless and wholly ineffectual power to say that it could own, manage, operate and maintain its system of ditches and "administer" the water supply of the district thereby, and yet hold it could not protect its right to deliver water to such a user as had water rights, without the consent or approval of another authority. The glaring inconsistency of the challenge defendants thus present is so obvious as to answer its own contention.

It is not contended by plaintiff that Secs. 501–514, Chap. 151, N.M.Comp.St.1929, are repealed by the Conservancy Act. The question of what duties, if any, remain for the commissioners under the community ditch in question, and other ditches similarly situated, may be intriguing, but an answer is not necessary to a decision of this case. It is enough if we can say that the plaintiff owns, and may manage and control the ditch itself.

It might, under authority of the Act, have filled in and abandoned such ditch and constructed nearby or at some distance another more adequate and convenient for the service of water upon the land of the users. It could not then have been contended, we take it, that the defendants would have any legitimate claim of right to manage or control the newly constructed ditch. Or, the plaintiff could have made use of the present ditch after having "altered" or "changed the course or terminus" thereof. Sec. 308, Chap. 30, supra. The fact that the old ditch was taken over un-

der the appraisal plan and used in substantially its present condition as to course and terminus could not affect the question. The land owners taking their allowable water under undisturbed prior water rights, through such medium, would clearly have no right to interfere with the service provided. It is not contended, by plaintiff, as we have said, that any "water right" could be, or is in fact attempted to be, affected by this legislation. All water rights of the individual remain undisturbed; but the administration of these rights, so far as the impounding, diversion, carrying and delivering of so much water for irrigation as any land owner under the project is by prior established right entitled to receive, has now been placed in the hands of this new and superior authority, plaintiff District.

Whether this was wise legislation, whether a more beneficial, economical and happier solution of the problem would have been to leave the ownership, management and control of the ditches in the local committees, is not for this court to say. The legislature thought it wise to provide the machinery found in the Conservancy Act. Thus operating, the land owners of the district must of necessity surrender the superior right of control of the distributing system.

An additional question presented by appellees is whether the District is the proper party plaintiff. It is suggested that the real party in interest here is the water user who was denied the right to take his water from the ditch. We do not agree with this contention. The District itself was by defendants denied the right to control the flow of water in the ditch and to deliver it to the person entitled thereto, in other words, to operate and manage the ditch. Incidentally, it is true, the said water user was suffering some denial of right because of his failure to get water; yet more particularly were the rights of plaintiff being here challenged.

It seems to us that a relatively simple matter is presented by the pleadings and the record here. To argue for dual control of these main ditches is to argue for placing additional burdens upon the land owners who already stand assessed for benefits which, in some cases at least, may not be fully enjoyed. The tax burden already fixed is sufficiently burdensome. The legislature could not have intended to repose dual control of these ditches with dual authority for laying assessments and incurring expenses. The whole machinery would, under such circumstances, bog down through sheer bewildering unworkability and intolerable conflict of authority.

We hold that plaintiff could by authority of the Conservancy Act take over, own and control the ditch in question; and further that it did so take over the ditch. From an examination of the "Conservancy Record", referred to and embodied in the decree of the District Court, it clearly appears that such ditch, among others, was taken over including "rights appertaining thereto, incident to its administration and for controlling and administering of water

rights pertaining to land under such ditch." Par. 4.16 of Conservancy Appraisal Record.

The trial court was in error in denying plaintiff the injunctive relief prayed for, for which reason the cause is reversed and remanded with directions to set aside the former judgment entered below and enter judgment permanently restraining and enjoining defendants as prayed for in plaintiff's complaint.

It is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.