500 P.2d 180

In the Matter of the ESTATE of Thelma W. TARLTON, Deceased.

Dominica RUSH, Objectant-Appellant,

v.

Inez STRICKLAND, Administratrix-Appellee.

No. 9386.

Supreme Court of New Mexico.

Aug. 11, 1972.

Sosa & Neumeyer, Las Cruces, for objectant-appellant.

Modrall, Sperling, Roehl, Harris & Sisk, John R. Cooney, Albuquerque, for administratrix-appellee.

## OPINION

STEPHENSON, Justice.

This is an appeal from probate proceedings in Sierra County. Appellant, claiming to be a creditor of decedent's estate, unsuccessfully objected in probate court to the final report of the administratrix with will annexed (appellee) and unsuccessfully moved the probate court to transfer the proceedings to district court. Appellant then appealed to the district court and there attempted to vacate the order appointing appellee as administratrix with will annexed. The district court dismissed the appeal. We affirm.

Appellant is the owner and landlord of certain property ("the property") which had been leased to the decedent and upon which decedent had operated a bar prior to her death in April of 1969. The lease, which was originally entered into between the decedent and a third party in 1968, provided for a tenancy of three years, with the rental sum of $6,480.00 to be paid in monthly installments of $180.00 each, beginning in March of 1968. In September of 1968 it was amended so as to extend until March of 1973.

After decedent's death, appellee, in her capacity as administratrix, took possession of the property until the probate court approved a sale of both the business and its liquor license on October 11, 1969. Appellant never objected to the sale. Appellee paid the rent for the period of her occupancy.

Appellant claims the lease survived the decedent, that it passed to the appellee as personalty and that the appellee is indebted to her for the rent which has accrued since appellee made the last payment. Appellant did not advance this claim by filing it in the manner prescribed by statute (§ 31–8–1 to 14, N.M.S.A., 1953). Instead, she advanced it by objecting to the final report filed by the appellee, demanding that the appellee be directed to pay that rent which accrued and which was due in the future. Appellant filed these objections before the estate was closed but after the six month limitation for filing claims had expired. See § 31–8–3, N.M.S.A., 1953. (Earlier, appellant properly filed—but later withdrew—a timely claim for utility charges allegedly due on the property.) At the same time appellant made· these objections she also filed a motion to transfer the proceedings from probate court to district court pursuant to § 16–4–12, N.M.S.A., 1953.

The probate court subsequently found both the objections and the motion to be without merit, entered a final decree and discharged the appellee. Appellant then

appealed to the district court pursuant to § 16-4-18, N.M.S.A., 1953, where she moved to vacate the order appointing appellee as administratrix with will annexed on the grounds that appellee, an out-of-state resident, had failed to file a consent to suit form with the Secretary of State as required by § 31-1-6(B), N.M.S.A., 1953 (Pocket Supp. 1971). On the same basis she also requested that appellee's actions be "voided." The district court granted appellee's motion to dismiss the appeal.

■ We shall first deal with appellant's claim for rent under the lease. Critical here is the manner in which appellant asserted the claim: by objecting to the final report after the nonclaim statute had expired. Section 31-8-3, supra. If the manner of making this claim was correct, then the district court erred in dismissing the appeal. If it was not correct, however, and was barred by the nonclaim statute, then appellant has no cause to complain.

■ Sections 31-8-1 to 14, supra, provide for the manner in which claims are to be filed against the estate. Section 31-8-13, supra, provides for the order of payment of "debts not due" and "contingent claims." We see no reason why the rent in this transaction is not a "claim" as contemplated by these statutes generally and a "debt not due" as specifically contemplated by § 31-8-13, supra. Generally, a claim for unpaid rent is barred by a nonclaim statute if not timely filed. 31 Am.Jur.2d Executors and Administrators § 277. See also Annot., 22 A.L.R.3d 814, 815-18. In this respect it is similar to a claim for payments on an installment note coming due after decedent's death. Consequently, failure to file the claim resulted in its being barred. Such a claim for installments of rent is not unlike stipulated child support payments, which were held to be a proper subject of a claim under § 31-8-13, supra, in Hill v. Matthews, 76 N.M. 474, 416 P.2d 144 (1966). Appellant, therefore, had no standing to appeal to the district court since an appeal can only be taken by a "person aggrieved" by the probate court's decision. Section 16-4-18, supra. Appellant in no way fits into this category. See Ruidoso State Bank v. Brumlow, 81 N.M. 379, 467 P.2d 395 (1970).

Appellant, however, advances three reasons why this "claim" was not barred by the nonclaim statute. Her first contention is that appellee's actions in taking possession of the property and paying the rent for six months following decedent's death somehow created a liability independent of that of the decedent; that this liability became "acquired and affirmed" by the appellee and that a claim was not required to be filed against the estate. As authority for this position, appellant relies upon Tierney v. Shakespeare, 34 N.M. 501, 284 P. 1019 (1930).

Appellant has misconstrued the ruling of the Tierney case, which involved the liability of an estate for the superadded liability of bank stock which had been owned by the decedent. The liability accrued when the bank became insolvent—subsequent to the death of the decedent. This court held that this was not a liability governed under the claim statutes, but insead was a liability which fell upon the estate "during the course of administration." Such is not the situation here, where the obligation was created by the decedent herself prior to her death when she signed the lease. That this is a critical distinction between these two cases is verified by the following language from the Tierney case, which was taken from Martin v. Saxton, 48 Utah 488, 160 P. 441 (1916):

> "We think the demands and claims referred to in the statute requiring presentation are those arising out of contracts or transactions with the decedent, and not to claims or transactions had with the executor or administrator."

Thus appellee's actions did not exempt appellant's claim from the nonclaim statute, which we have held to be mandatory to such a degree that failure to file cannot be excused by the doctrine of estoppel or

waived by the representative. In re Landers' Estate, 34 N.M. 431, 283 P. 49 (1929) held:

"Neither the conduct of the heir towards claimants, as unjust as it may have been, nor the efforts of the administrator to avoid the statutory bar, can avail anything. The statute is mandatory."

Appellant's second contention is based upon the fact that under the terms of the lease she had secured the payment of unpaid rent by means of a lien upon the liquor license on the property. From this appellant reasons that appellee acquired the license subject to the encumbrance, and that the right to enforce this lien exists independently of the nonclaim statute. Furthermore, maintains appellant, the encumbrance somehow attaches to the proceeds of the sale of the license by the appellee. In support of this position, appellant relies upon Shortle v. McCloskey, 39 N.M. 273, 46 P.2d 50 (1935) and In re Kenney's Estate, 41 N.M. 576, 72 P.2d 27 (1937).

We find nothing in Shortle v. McCloskey, supra, to support appellant's position. That case was concerned with the question of priority between a mortgage and administration expenses. In re Kenney's Estate, supra, involved a debt secured by a mortgage on real property which had been owned by decedent. That case held that "[a] mortgage debt is not barred by limitation because not filed for payment with the executor or administrator" and that it "does not become a debt of the estate unless the payee elects to file it as a claim." It further held, however, that failure to file it as a claim against the estate would prevent a claim for a deficiency after the proceeds of the foreclosure sale had been applied to the payment of the debt, i. e., only the encumbered property can be looked to if no claim is filed.

In re Kenney's Estate, supra, appears to reflect the general rule: A mortgagee who disregards the claim procedure and looks only to the security waives any later claim against the assets of the estate for a deficiency. See 3 Bancroft's Probate Practice,

§§ 790–94 (2d Ed. 1950). Similarly, many jurisdictions allow the mortgagee to look to the assets for a deficiency if he has filed a timely claim. Id. § 792. Although this rule is usually recited with respect to real property, it appears that it also applies to personal property. Id. § 795.

In this case, however, the security (the liquor license) has been sold; with the approval of the probate court and without any apparent objection by the appellant. Appellant now, however, asserts that appellee holds the proceeds of that sale "for those having an interest and that includes appellant." Appellee, on the other hand, asserts that because of the holding In re Kenney's Estate, it follows that if a claim is not filed, the estate is liable only in the sense that the encumbered realty is liable, and whatever right the appellant may have to enforce her lien against the third party purchaser is a separate problem which is not presently before this court.

We are in partial agreement with appellee. Appellant indicates a desire to enforce her lien against the security, but that is a question not before us. Numerous questions readily come to mind concerning appellant's rights in the proceeds: whether the lien is in fact a "security interest" within the provisions of the Uniform Commercial Code, whether it was perfected and if so, whether it extended to the proceeds of the sale. However, these particulars did not seem to bother appellant. She has elected to look to the security. Until her rights in that property are decided any other questions are irrelevant. A successful foreclosure by appellant could also render these questions moot. We need not answer them now. All that is before us is whether the lien allows appellant to obtain the proceeds without filing a claim with the estate. We hold that it does not. If a mortgagee must file a claim in order to seek a deficiency judgment, it naturally follows that he must do the same to obtain the proceeds of the sale.

Finally, appellant contends that as a landlord of the property she has a statuto-

ry lien on the "estate assets" in the leased premises by virtue of § 61–3–4, N.M.S.A., 1953. This assertion also raises several interesting legal questions, but once again we do not find it necessary to resolve them. Appellee asserts that appellant did not raise this issue in the proceedings below. Appellant does not dispute this, and an inspection of the record does not contradict it. Consequently, we will not consider this assertion for the first time in this court. E. g. City of Albuquerque v. Ackerman, 82 N.M. 360, 482 P.2d 63 (1971); N.M. Supreme Court Rule 20(1) [§ 21–2–1(20) (1), N.M.S.A., 1953].

We shall now deal with the probate court's refusal to transfer the proceedings to district court. Appellant moved the court for the transfer at the same time that she filed her objections to the final report, relying upon § 16–4–12, supra. The pertinent language of that statute reads as follows:

"Whenever the probate judge shall, for any reason, be interested or disqualified from acting in any proceeding coming within the jurisdiction of the probate court, he shall upon his own motion or that of any interested party, forthwith enter an order transferring such proceeding to the district court having jurisdiction in that county * * *."

Appellant maintains the filing of this motion made the transfer of the case mandatory, and that thereafter the probate court was without jurisdiction to proceed.

Appellant has misconstrued the provisions of § 16–4–12, supra. It is true that the statute speaks of a transfer in mandatory terms, but only if the probate judge is either "interested" or "disqualified" from presiding. Appellant, however, made no such allegations of interest or disqualification in the motion, nor did she tender any proof of such.

There is a real question here of what is required to disqualify a probate judge presiding over a probate court. Specifically, the question is whether § 21–5–8, N.M.S.A., 1953, is applicable to probate judges in light of the provisions in § 16–4–12, supra. Section 21–5–8, supra (assuming, without deciding, that the petition meets the requirements of that section) provides for the disqualification of a judge "in any action or proceeding, civil or criminal" by a party who *believes* that the judge cannot preside with impartiality. Although § 21–5–8, supra, has been held applicable to juvenile court proceedings Frazier v. Stanley, 83 N.M. 719, 497 P.2d 230 (1972), workmen's compensation actions State v. Arledge, 54 N.M. 267, 221 P.2d 562 (1950) and certain probate proceedings conducted in district courts Talbot v. Taylor, 51 N.M. 160, 181 P.2d 159 (1947), it is not applicable to probate judges. Section 21–5–8, supra, requires only a belief of impartiality, whereas § 16–4–12, supra, requires an actual interest or disqualification. Furthermore, certain parties to probate proceedings are protected in other ways. A "person interested" may transfer the case to the district court under the provisions of § 16–4–19, N.M.S.A., 1953, if the inventory of the estate discloses assets in excess of $2,000.00. And a "person aggrieved" is entitled to a trial de novo in the district court on appeal. Section 16–4–18, supra.

Consequently, we find § 16–4–12, supra, to be merely a statutory declaration of Article VI, Section 18 of the New Mexico Constitution, which prohibits any judge from sitting in any cause in which he has an interest except by consent of all the parties. Appellant's motion, therefore, could not act to automatically transfer the cause; it was necessary for her to have directed the court's attention to the grounds for disqualification. See Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1 (1929).

Appellant's last point involves appellee's failure as a nonresident to file the required consent to suit form with the Secretary of State. Section 31–1–6(B), supra. The pertinent portion of that statute reads as follows:

"A nonresident may qualify as an executor or an administrator by filing with

the secretary of state an irrevocable consent that suits and actions may be commenced against him in the proper court of any county of this state in which cause of action may arise or in which the plaintiff may reside, by the service of process * * * on the secretary of state * * *."

Appellant maintains that this failure, in light of the provisions of § 31–8–3, supra, results in the tolling of the nonclaim statute until a successor is appointed. That statute contains language which directs that the period is tolled during the "permanent removal" from the state of any executor or administrator prior to the expiration of the time for filing claims. (Appellant first raised this point by way of motion in the district court after the probate court had entered its final decree and after appellant had appealed to the district court.)

 Essential to the success of appellant's theory is a determination that the appointment of appellee as administratrix was void rather than merely voidable. This we are not prepared to do. The appointment of an administrator or executor is not void unless the irregularity is apparent from the face of the record. Otherwise, the appointment is merely voidable and all acts done by the representative in the due course of administration are binding and not subject to collateral attack. See 31 Am.Jur.2d Executors and Administrators § 102; In Re Price's Estate, 136 Minn. 333, 162 N.W. 454 (1917). This is also the rule in New Mexico. Smith v. Steen, 20 N.M. 436, 150 P. 927 (1915); Amberson v. Candler, 17 N.M. 455, 130 P. 255 (1913); Cf. Baca v. Buel, 28 N.M. 225, 210 P. 571 (1922). Here, the defect was not apparent from the record since the consent was to be filed with the Secretary of State. Hence, the acts of the appellee

are valid, her appointment is not void, and the nonclaim statute is not tolled.

Furthermore, § 31–8–3 is not applicable to appellee in this situation. Section 31–1–6(B) was passed subsequent to § 31–8–3, which existed for many years within the context that a nonresident could never act as a representative. Appellee maintains that § 31–1–6(B), allowing nonresidents to serve, is irreconcilable with the tolling provisions of § 31–8–3 and that these provisions are thus repealed by implication. We do not believe this is necessary. One authority has reasoned as follows:

"The courts in states where such is the situation have experienced considerable difficulty in reconciling the two statutes, one authorizing the issuance of letters to a nonresident and the other authorizing revocation of letters issued to any person who permanently removes from the state. It is now well established, however, that reconciliation is possible. The proper construction of the provision authorizing suspension of powers and revocation of letters of a representative who permanently removes from the state does not warrant an immediate revocation of letters issued to a nonresident, and only warrants such action when he fails to come into the state after appointment and personally to conduct the business of the estate at such times and as frequently as the interest of such estate and of those interested therein may require." 2 Bancroft's Probate Practice, § 287 (2d Ed. 1950).

Finding no error, the judgment of the district court dismissing the appeal is affirmed.

It is so ordered.

COMPTON, C. J., and CAMPOS, D. J., concur.