553 P.2d 726

**SANTA FE PACIFIC RAILROAD COMPANY and Cherokee and Pittsburg Coal and Mining Company, Appellants,**

**v.**

**PROPERTY TAX DEPARTMENT of the State of New Mexico, Appellee.**

**No. 2419.**

Court of Appeals of New Mexico.

July 27, 1976.

Rehearing Opinion Aug. 10, 1976.

448

John R. Cooney, Modrall Sperling, Roehl, Harris & Sisk, Albuquerque, for appellants.

Toney Anaya, Atty. Gen., John C. Cook, Property Tax Dept., Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

This appeal is concerned with three regulations adopted by P.T.D. (Property Tax Department). The regulations pertain to class one mineral property, both nonproductive and productive. We consider the challenges to each regulation separately. Statutory references are to Articles 28, 29 and 31 of Chapter 72, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975).

*Regulation 29–11:2—Class One Nonproductive Mineral Property*

Section 72–29–11(B), supra, defines class one nonproductive mineral property in terms of mineral lands held under private ownership in fee "and the property is known to contain minerals in commercially workable quantities of such a character as add present value to the land in addition to its values for other purposes but is not operated so as to fall in the class of class one productive mineral property . . . ."

The challenged portion of Regulation 29–11:2 provides a method for determining whether property is to be classified as class one nonproductive mineral property. The challenged portion of the regulation reads:

"If 'development expenditures' as defined in Section 616 of the United States Internal Revenue Code of 1954, as amended or renumbered, are attributable to any land held in private ownership in fee during any of the ten years immediately preceding the tax year for which the property is being valued, the property is presumed to contain minerals in commercially workable quantities of such a character as add present value to the land in addition to its values for other purposes. See Federal Regulation (I.R. C.) Section 1.616–1. If such property is not mined to the extent specified in subsection A of Section 72–29–11, it is, unless the presumption is rebutted, to be classified as 'class one nonproductive mineral property' under subsection B of that section."

Under the regulation, if a taxpayer attributes development expenditures to a particular piece of property under Section 616 of the Internal Revenue Code, the property is presumed, for the next ten years, to contain minerals in such quantities and character so as to classify the property as class one nonproductive mineral property. The presumption is not conclusive; rather, the presumption is rebuttable.

Title 26, U.S.C.A. § 616 provides that in certain instances a deduction is allowed in computing taxable income for "all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit (other than an oil or gas well) if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed."

As explained in C.F.R., 26 Internal Revenue, Part 1 (1976) § 1.616–1: "Development expenditures under section 616 are those which are made after such time when, in consideration of all the facts and circumstances (including actions of the taxpayer), deposits of ore or other mineral are shown to exist in sufficient quantity and quality to reasonably justify commercial exploitation by the taxpayer."

 Clearly, there is a rational reason for the regulation. If the taxpayer attri-

butes development expenses to a piece of property under Section 616 of the Internal Revenue Code for federal tax purposes, he is asserting that the particular piece of property contains minerals in commercially workable quantities. The regulation uses the taxpayer's assertion to classify the taxpayer's property as class one nonproductive mineral property unless the taxpayer rebuts the classification. The regulation is not arbitrary. See *International Min. & Chem. Corp. v. Property Ap. Dept.,* 83 N.M. 402, 492 P.2d 1265 (Ct.App.1971).

The fact that in a number of situations the regulation's presumption would not accurately reflect the facts or would result in unequal treatment between taxpayers does not render the regulation arbitrary. The presumption is rebuttable; the taxpayer would have opportunity to present facts to rebut the presumption. Once there was credible and substantial evidence which would support a contrary finding, the presumption would no longer exist. *Payne v. Tuozzoli,* 80 N.M. 214, 453 P.2d 384 (Ct. App.1969). It would be the taxpayer's burden to introduce facts to rebut the presumption. See *Kaiser Steel Corp. v. Property Appraisal Dept.,* 83 N.M. 251, 490 P.2d 968 (Ct.App.1971).

The appellants contend that is no substantial evidence to support the regulation. P.T.D. asserts the regulation does not involve any factual determination and thus need not be supported by substantial evidence. We do not answer P.T.D.'s contentions. Because § 72–31–89(F)(2), supra, authorizes this Court to set aside the regulation if not supported by substantial evidence, we assume the regulation must be supported by substantial evidence in the record. Compare the different standard for review in *Wylie Bros. C. C. v. Albuquerque-Bernalillo C.A.C.B.,* 80 N.M. 633, 459 P.2d 159 (Ct.App.1969).

Section 72–31–89(F)(2), supra, refers to substantial evidence in the record "taken as a whole". We are not concerned with the standard to be applied. See *McDaniel v. New Mexico Board of Medical Exami-*

*ners,* 86 N.M. 447, 525 P.2d 374 (1974); Compare, *Kaiser Steel Corp. v. Property Appraisal Dept.,* supra.

Appellants' contention is that there is an absence of substantial evidence to support the regulation. We disagree. Witness Sprague testified to similarities between the statutory definition of class one nonproductive mineral property and Section 616 of the Internal Revenue Code. At the public hearing held prior to adoption of the regulation, Kerr-McGee Corporation stated: "While Sec. 616 of the Internal Revenue Code could be one criteria for determining whether a property contains minerals in commercially workable quantities it should not be the only criteria since a taxpayer's tax return is subject to audit and possible corrections in subsequent years." This statement was made before the proposed regulation was amended to provide a rebuttable presumption. There was substantial evidence to support the regulation.

■ Appellants assert the regulation was not adopted in accordance with law because it is an invalid regulation by reference. The contention is that the regulation is substantive, not procedural. We disagree. The regulation announces a procedure for classifying the property based upon the taxpayer's treatment of the property for federal tax purposes. That is procedural, and the reference to Section 616 of the Internal Revenue Code was authorized. See *Middle Rio Grande Water Users Ass'n v. Middle Rio Grande Con. Dist.,* 57 N.M. 287, 258 P.2d 391 (1953).

Appellants also contend that the regulation is procedurally defective because there were no findings of fact or statement of reasons and, thus, this Court cannot know what the P.T.D. had in mind in adopting the regulation. See *New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd.,* 88 N.M. 201, 539 P.2d 221 (Ct.App.1975). We disagree; the record shows the reasoning of the P.T.D., and that reasoning is sufficient for our review.

Appellants assert the regulation is not substantially in accordance with law be-

cause the regulation "would extend the statute to situations not intended to be covered." Appellants' argument is that under the regulation, property would be classed as class one nonproductive mineral property when, because of the facts, the property would not be so classed under the statutory definition. The answer is that the regulation does not extend the statute. The regulation establishes a presumption that property comes within the statutory definition but permits the taxpayer to show facts rebutting the presumption.

■■ Appellants also challenge the regulation on the basis that P.T.D. had no authority to adopt the regulation. The record shows that P.T.D. proceeded on the basis of § 72–31–88, supra. That section ". . . establishes the requirements and procedures for the adoption . . . of those regulations . . . authorized . . . under the provisions of article 29 of chapter 72 . . . ."

The procedures of § 72–31–88, supra, apply to the adoption of regulations authorized in Article 29. Appellants assert there is no authority in Article 29 for the adoption of the regulation.

The P.T.D. asserts that the authority is found in § 72–29–12(H), supra. That section reads: "The department shall adopt regulations specifying procedures to be followed under, and the details of, the method for valuation of mineral property specified in this section." Section 72–29–12(E), supra, provides that class one nonproductive mineral property is to be valued by applying a per acre value to the surface acres of the property. P.T.D. asserts that § 72–29–12(H), supra, authorizes the regulation because the regulation creates a presumption that a certain type of property should be valued pursuant to § 72–29–12(E), supra. This reasoning is specious. The regulation creates a presumption that certain property is to be classified in a certain way; if that classification exists, the method of valuation is provided by the statute. The regulation does not deal with

valuation; it deals with classification. Section 72–29–12(H), supra, does not authorize the regulation. No other provision in Article 29 is relied on to authorize the regulation.

The fact that Article 29 does not authorize the regulation does not dispose of the question as to P.T.D.'s authority. Section 72–28–4, supra, provides the authority. Paragraph A of that section states that the director's duty is to administer and enforce the Property Tax Code. Paragraph B states that the director has the implied powers necessary to perform his duties. Section 72–28–4(B)(5), supra, authorizes the director to issue regulations "to assure implementation of and compliance with the provisions of the Property Tax Code . . . ." The foregoing is authority to adopt the regulation because the regulation seeks to assure compliance with the statute defining class one nonproductive mineral property.

■ Appellants assert that § 72–28–4, supra, cannot be relied on as authority because in issuing the regulation P.T.D. did not purport to rely on this section, rather it proceeded under § 72–31–88, supra. The answer is that appellants are not hurt. Appellants received procedural benefits under § 72–31–88, supra, that do not exist under the applicable procedural statute, which was § 72–31–87, supra. Having received these procedural benefits, appellants cannot complain of the procedure. Apart from the procedure, § 72–28–4, supra, authorized P.T.D. to adopt the regulation.

The challenges to Regulation 29–11:2 are without merit.

*Regulation 29–12(E):1—Valuation of Class One Nonproductive Mineral Property*

■ Section 72–29–12(E), supra, provides for the valuation of class one nonproductive mineral property as follows:

1. The value for property taxation purposes is to be determined by applying a per acre value to the surface acres of the property being valued.

2. The per acre value is to be determined by regulations adopted by P.T.D.

3. The regulations "shall establish a per acre value based upon bonus bids accepted by the commissioner of public lands for the latest one [1] year period in which bonus bids were accepted for the sale of mineral leases, which per acre value may be determined by geographical areas."

The regulation adopted by the P.T.D. provides:

1. The total of the bonus bids are to be divided by the number of acres leased by competitive bidding within a county.

2. The quotient derived by the above division "shall be multiplied by one hundred and the product shall be the value per acre . . . in the county."

3. If P.T.D. determines that a "variance of the bonus bids . . . is sufficient to indicate a smaller or larger geographical area than the county should be used, then the area of the county . . . may be changed by Department order to an area greater than or smaller than a county."

Appellants complain of the "100 multiplier", the failure of the regulation to differentiate between different types of minerals and the use of the county as the geographic area in arriving at the quotient. We need consider only the 100 multiplier.

The evidence is that prior to § 72–29–12 (E), supra, this class of property was valued at a taxable value of $10.00 per acre or a full value of $30.00 per acre; that under the "bonus bid" approach enacted by the Legislature, the valuation could be less than the prior valuation; that the multiplier was used to arrive at relatively the same valuation used under prior law.

A multiplier of 100 was arrived at on the basis of bonus bids in Grant County. Multiplying the quotient in Grant County by 100 resulted in a per acre value of $33.33. This value was consistent with P.T.D.'s predetermined figure as to per acre value. The evidence, however, is that the multiplier results in great disparities between counties. Using the 100 multiplier, the per acre value in McKinley County would be $866.00.

P.T.D. asserts that the provision in the regulation providing for a geographical variance to areas greater or lesser than the county offsets the disparities caused by use of the 100 multiplier.

We agree with the appellants that there is no substantial evidence supporting use of a multiplier which results in the disparities between counties in per acre value. We do not say that disparities could not be justified; what we hold is that there is no substantial evidence in this record supporting use of the 100 multiplier. The provision for geographical variance does not support use of the multiplier because the evidence is that procedures for implementing such a variance had not been developed by P.T.D.

The use of the 100 multiplier is not supported by substantial evidence. Section 72–31–89(F), supra. We do not reach other contentions because the regulation must be set aside.

*Regulation 29–12(G):1—Valuation of Class One Productive Mineral Property*

Section 72–29–11(A), supra, defines class one productive mineral property. Section 72–29–12(C), supra, states the value of this class of property for property taxation purposes in terms of the annual net production value of the mineral property. Section 72–29–12(F), supra, defines annual net production value in two ways. The regulation in question is directed to the first statutory definition, the pertinent part of which reads:

"F. For purposes of this section, 'annual net production value' means either:

"(1) the average of five [5] years' net production value from the mineral property for the five [5] years immediately preceding the tax year in which value is being determined, or so much of the

period during which the property has been in operation, with each year's net production value being determined by taking the year's market value of production of all minerals, including any bonus or subsidy payments, and deducting from that value:

"(a) any royalties paid or due the United States, the state or any Indian tribe, Indian pueblo or Indian who is a ward of the United States;

"(b) the direct costs, exclusive of depreciation, determined under generally accepted accounting principles consistently applied by the taxpayer, of extracting, milling, treating, reducing, transporting and selling the minerals; and

"(c) the costs of depreciation, determined under generally accepted accounting principles consistently applied by the taxpayer, of property actually used in the extracting, milling, treating, reducing and transporting of the minerals . . . ."

The statute expressly provides that each year's net production value is determined by taking the year's market value of production, including bonus and subsidy payments, and deducting from that value certain royalties, certain direct costs and the costs of depreciation. Because deductions from the year's market value of production are specifically authorized, the annual "net" may be a minus figure under the statute.

Regulation 29–12(G):1 provides that the P.T.D. "will not permit the use of minus figures for a particular year's net production value in calculating the average of five years' net production value."

The regulation is contrary to the provisions of the statute. The regulation is not in accordance with law because the P.T.D. has no authority to adopt regulations modifying the statutory provision for determining the annual net production value. *Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue,* 86 N.M. 629, 526 P.2d 426 (Ct.App. 1974); *Rainbo Baking Co. of El Paso v. Commissioner of Rev.,* 84 N.M. 303, 502 P. 2d 406 (Ct.App.1972). We do not reach other contentions because the regulation is not in accordance with law.

Oral argument is unnecessary. Regulation 29–11:2 is affirmed. Regulation 29–12 (E):1 is set aside because not supported by substantial evidence. Regulation 29–12 (G):1 is set aside because not in accordance with law. The case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.

## ON MOTION FOR REHEARING

Our opinion set aside Regulation 29–12(G):1 because not in accordance with law. P.T.D.'s motion for rehearing points out that the entire regulation was not attacked; that the only challenge to the regulation went to the use of minus figures and that we should not have set aside the entire regulation. We agree.

The sentence in the closing paragraph of the opinion which refers to Regulation 29–12(G):1 is changed to read: "That portion of Regulation 29–12(G):1 which would not permit the use of minus figures for a particular year's net production value is set aside because not in accordance with law."

Rehearing on other grounds asserted in the motion are denied.